**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

THE ESTATE OF ORVILLE C. HARRIS, )
deceased, by and through JOANN MOEGE, )
as Special Administratrix of the Estate and )
on behalf of the Heirs-at-Law of ORVILLE )
C. HARRIS, deceased, )
                                                      )
                **Plaintiff,**              )
                                                        )
v.                                                        )      Case No. 09-1012-JTM
                                                            )
**ALTERRA HEALTHCARE**           )
**CORPORATION, d/b/a Sterling House of**  )
**McPherson,**                                 )
                                                      )
                **Defendant.**              )
                                                     )
_____)

## MEMORANDUM AND ORDER

This matter is before the court on (1) plaintiff's motion to compel defendant to properly respond to certain interrogatories, production requests, and requests for admission (Doc. 24) and (2) defendant's motion for a protective order (Doc. 28). As explained in greater detail below, plaintiff's motion shall be GRANTED IN PART and defendant's motion for a protective order shall be GRANTED.

## Background

Orville Harris was a patient/resident in defendant's nursing home in McPherson,

Kansas. Highly summarized, plaintiff alleges that Mr. Harris reported chest pains the morning of January 26, 2007 and defendant's staff observed that his lips were blue and he had trouble breathing. Notwithstanding these observations, defendant's "nurse-in-charge" denied requests by other employees to call 911 and treated Mr. Harris for indigestion. In response to continued complaints of chest pain, the nurse-in-charge had Mr Harris placed in a recliner the night of January 26 and morning of January 27. Employees at the nursing home were finally allowed to call an ambulance for Mr. Harris the evening of January 28, 2007. Mr. Harris had, in fact, suffered a heart attack and died January 31, 2007. Plaintiff alleges that defendant was negligent and made fraudulent representations concerning the care and treatment provided to Mr. Harris.

### Plaintiff's Motion to Compel

As noted above, plaintiff moves to compel proper responses to interrogatory answers, production requests, and requests for admissions. The individual discovery requests are discussed below.

**Interrogatories 2, 3, 5, 8, 12, 14, 18, 20 and 21 and
Request for Admissions 18, 20 and 21**

Defendant supplemented its answers to the above interrogatories and requests for admission *after* plaintiff moved to compel. Plaintiff advises that, based on the supplemental responses, interrogatories 2, 3, 5, 8, 14, 18, 20 and 21 and requests for admission 18, 20 and

21 are "no longer in dispute." (Doc. 34, p. 3-5). Accordingly, the issue of compelling proper responses to these discovery requests is moot.[1]

**Interrogatory No. 17**

Interrogatory 17 requests a detailed explanation of defendant's basis for denying 35 separate requests for admission. Defendant opposes the motion, arguing that Interrogatory 17 and its 35 subparts exceed the number of interrogatories permitted by the scheduling order. (Doc. 10, no more than "30 interrogatories, including all discrete subparts"). Plaintiff counters with a request to allow these additional interrogatories.

The court is not persuaded that plaintiff has shown good cause for modifying the number of interrogatories permitted by the scheduling order. Accordingly, plaintiff's request to expand the number of interrogatories is rejected and the motion to compel Interrogatory 17 is DENIED.[2]

**Production Request 5**

Production Request 5 asks for all corporate tax returns related to the McPherson

---

[1] Although production is no longer an issue, plaintiff seeks attorney fees related to the filing of the motion to compel.

[2] In essence, plaintiff is attempting to compel factual information on multiple topics in one generic interrogatory. Plaintiff's approach distorts (1) the proper function of requests for admissions (to narrow disputed factual issues) and (2) the normal limitations concerning the number of interrogatories served in a case.

facility from 2002 to the present for purposes related to plaintiff's claim for punitive damages. Defendant opposes the request, arguing that (1) the information requested lacks relevance and (2) alternative financial reports are available concerning defendant's financial status. Specifically, defendant agrees to provide the most recent financial information in the form of current financial statements and requests a protective order "preventing plaintiff's counsel from disseminating the financial information or using it for any purpose beyond this lawsuit." Plaintiff agrees to a reasonable protective order and asks that this information be provided.

Based on the parties' representations, defendant shall produced its most current financial statements on or before **July 23, 2010.** Plaintiff and counsel shall not use the financial information for any purpose beyond this lawsuit. Additionally, defendant shall draft and circulate a proposed order concerning the disclosure of the financial information by **July 19, 2010.**

**Production Request 11**

Production Request 11 seeks certain phone records from January 26 through January 28, 2007. Defendant initially indicated it was "gathering these records and this response will be supplemented as necessary." (Doc. 25-6, p. 5). However, the phone records were not produced and plaintiff moves to compel. After the motion to compel was filed, defendant responded: "the only records believed to be in defendant's possession are the records for two facility-owned cell phones, which defendant is attempting to locate and which will be

produced when located." Plaintiff argues that the phone records have yet to be produced and asks for an order directing that the records be produced within a reasonable time.

In the context of discovery, the phone records are clearly relevant to the events surrounding the treatment of Mr. Harris and when certain phone calls were made concerning his care. Defendant has neither asserted a valid objection to the production request nor has it asserted that the records are not in its possession. Accordingly, plaintiff's motion to compel Production Request 5 shall be GRANTED and the phone records shall be produced by **July 23, 2010.**[3]

**Interrogatory Nos. 6, 7, 9, 10, 11 and 14 and
Production Requests 1, 3, 6, 8 and 9**

Defendant asserts the peer review/risk management privilege (K.S.A. 65-4915) in response to plaintiff's interrogatories 6, 7, 9, 11, and 14 and production requests 1, 3, 6, 8, and 9. Citing Adams v. St. Francis Regional Medical Center, 264 Kan. 144 (1998), plaintiff requests an order compelling production of the "factual information" contained within the claimed peer review information with redactions for "the information concerning decision-making processes, conclusions, and final decisions." Doc. 34, p. 1. Defendant counters that plaintiff should exhaust all other avenues of discovery and take depositions of the witnesses

---

[3] Defendant provides no valid explanation for failing to produce the phone records in a timely manner. If the records are *not* in defendant's possession and control, counsel should simply say so. If the records are *not* in defendant's possession, plaintiff is granted leave to issue discovery requests to the appropriate phone company for the records.

-5-

before being allowed access to the facts contained in the privileged documents.

The difficulty with defendant's "exhaustion" argument is that two key witnesses, Joan Diehl (the facility director at the time) and Brandi Groote (the "healthcare coordinator" and "nurse on call" for January 26-28, 2010) are no longer employed by defendant and defendant alleges that attempts to contact the two have been "unsuccessful." Doc. 30, p. 1, 2. The court summarily rejects an "exhaustion" argument by a party who asserts *in the very same brief* that the locations of two critical witnesses are unknown.[4]

The more difficult issue is sorting out the "factual" information in the alleged peer review material from the "decision-making process, conclusions and final decisions" which plaintiff concedes should be redacted. To assist the court in this evaluation, defendant shall deliver the documents listed in its privilege log to chambers for an in camera review by **July 19, 2010.**

**Attorney Fees and Costs**

Fed. R. Civ. P. 37(a)(5)(A) provides:

---

[4] Apparently, Diehl and Groote have now been located because docket entries dated July 8, 2010 (46 and 47) reflect notices to take the deposition of Joan Diehl and Brandi Groote on July 16, 2010 in Salina, Kansas. Diehl's mailing address is Salina, Kansas and Groote's mailing address is Little River, Kansas, both addresses within 40 miles of McPherson, Kansas. Defendant's assertion in its response brief that it could not locate Diehl and Groote follows defendant's cavalier and dilatory approach to discovery in this case. Further comments concerning defendant's approach to discovery will be reserved pending the in camera review of the documents listed in the privilege log.

> If the motion [to compel] is granted—*or if the disclosure or requested discovery is provided after the motion was filed*—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. (Emphasis added.)[5]

Defendant provided its supplemental discovery responses and privilege log *after* the motion was filed; therefore, Rule 37(a)(5)(A) is in play. Plaintiff has requested 12.5 hours of attorney fees at $200 per hour and defendant shall be allowed an opportunity to argue why Rule 37(a)(5)(A) attorney fees should not be imposed. Defendant's response should also address whether the failure to provide timely discovery responses should be attributed to defense counsel, defendant, or both. Defendant's response to the fee requests shall be filed by **July 23, 2010.**

**Defendant's Motion for a Protective Order**

Defendant moves for a protective order concerning its Resident Services Manual, arguing it has expended considerable time and resources developing the manual. Because commercial information contained in the manual is a valuable asset, defendant asserts that use of the manual should be restricted to this case and not disclosed to competitors. Plaintiff has not responded to the motion.

The court is satisfied that defendant has shown good cause for entry of a protective

---

[5] Rule 37(a)(5)(A) contains exceptions in subparts (i), (ii), and (iii). Defendant may wish to review and address the exceptions in its response.

order. Accordingly, the motion shall be GRANTED and defendant shall circulate a draft protective order for the court's review and approval by July 23, 2010.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 24)** is **GRANTED IN PART,** consistent with the rulings expressed herein. The court will address the remaining interrogatories and production requests after an in camera review of the documents listed on defendant's privilege log.

**IT IS FURTHER ORDERED** that plaintiff shall have thirty days following the production of documents and completion of depositions to submit their expert reports.

**IT IS FURTHER ORDERED** that defendant's motion for a protective order **(Doc. 28)** is **GRANTED.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 13th day of July, 2010.

                                      S/ Karen M. Humphreys
                                      KAREN M. HUMPHREYS
                                      United States Magistrate Judge